IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JANENE ELLSWORTH. obo NCE, | ) | Civil No. 09-348-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| COMMISSIONER of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    David B. Lowry
    9900 S.W. Greenburg Road
    Columbia Business Center, Suite 235
    Portland, OR 97223

        Attorney for Plaintiff

    Dwight C. Holton
    Acting U.S. Attorney
    Adrian L. Brown
    Asst. U.S. Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Leisa A. Wolf
Special Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff N.C.E., a child, seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act (the Act). Plaintiff seeks an order remanding this action to the Social Security Administration (the Agency) for further proceedings. For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

On April 2, 2003, Janene Ellsworth, plaintiff's mother, filed an application for Child's SSI disability benefits on plaintiff's behalf. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). Pursuant to that request, a hearing was held before ALJ Linda Haack on November 16, 2006. At the conclusion of the hearing, the record was held open for further development.

A second hearing was held before ALJ Haack on April 12, 2007. At the conclusion of the hearing, the record was again held open for further proceedings and the receipt of additional records.

FINDINGS AND RECOMMENDATION - 2

A third hearing was held on August 17, 2007. Plaintiff's mother and father, and Dr. Sally Clayton, a Medical Expert (ME), testified at the hearing.

In a decision issued on August 25, 2007, the ALJ found that plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on February 26, 2009, when the Appeals Council denied plaintiff's timely request for review. In the present action, plaintiff seeks review of that decision.

## Factual Background

Plaintiff was born on March 16, 2000, and was six years old at the time of the first hearing before the ALJ. The administrative record includes voluminous documentation of plaintiff's medical history. That record will not be fully summarized here. Instead, the relevant portions will be examined below in the discussion of plaintiff's criticisms of the ALJ's decision.

## Child Disability Analysis

A three-step sequential evaluation is used to assess claims of childhood disability. 20 C.F.R. § 416.924  The first question is whether the child is working. Id. A child who is working is not disabled within the meaning of the Act. The second question is whether the child has a medically determinable "severe" impairment or combination of impairments. Id. If the child has a severe impairment or impairments, the question at the third step is whether the child's severe impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. Id.

A child's functional limitations are evaluated in six "domains." 20 C.F.R. §§ 416.926a(b)(1)(I)-(vi). These include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself or himself; and (6) health and physical well-being. Id.

A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two "domains" of functioning or in an "extreme" limitation in one "domain." 20 C.F.R. § 416.926a(e)(2). A limitation is "marked" if an impairment seriously interferes with the child's ability to independently initiate, sustain, or complete activities. Id.

## ALJ's Decision

At the first step of her disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time.

At the second step, the ALJ found that plaintiff had "the severe impairment of Disruptive Behavioral Disorder, based solely on the anecdotal claims of the child's parents, most notably her mother." The ALJ further found that plaintiff's "[o]ther alleged impairments of ADHD; Asperger's Syndrome; hole in her heart, with Down Syndrome and bronchiolitis" were "non severe."

At the third step of her analysis, the ALJ concluded that plaintiff did not have an impairment that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.924, 416.925, and 416.926). Accordingly, she found that plaintiff was not disabled within the meaning of the Act.

**Standard of Review**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ erred at step two of the disability analysis by failing to find that her "severe" impairments included a reading disorder and attention deficit hyperactivity disorder (ADHD).  She contends that the action should be remanded for further proceedings, including additional development of the medical evidence concerning these impairments, and reassessment of whether plaintiff's impairments functionally equal the severity of an impairment in the Listings.

The Commissioner contends that the ALJ's analysis at step two was free from legal error and was supported by substantial evidence in the record.

Based upon a careful review of the record, I agree with the Commissioner.

FINDINGS AND RECOMMENDATION - 5

An impairment or combination of impairments is "not severe" if it "causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." Social Security Ruling (SSR) 96-3p, <u>available at</u> 1996 WL 374181.

The ALJ correctly noted that Gary Sacks, Ph.D., had carried out a consultative psychological evaluation with testing on July 23, 2003. She accurately noted that Dr. Sacks had found that plaintiff's behavior during that assessment was inconsistent with plaintiff's mother's reports concerning plaintiff's behavior. Dr. Sacks reported that plaintiff's behavior indicated good adjustment and appropriate skill development in areas that had concerned her mother. He noted that plaintiff could speak clearly with intact syntax and grammar that was age-appropriate, and could answer yes/no questions correctly and follow two-step commands. Plaintiff demonstrated no stereotypic language or motor movements, responded appropriately to verbal and non-verbal cues, and did not display any of the numerous behaviors listed on a four-page list of abnormal behaviors.

Gregory Morse, Psy.D., saw plaintiff four times between January 30, 2003, and February 4, 2004, and reviewed an evaluation report from the Multnomah ESD Program. In a letter of that latter date, Dr. Morse stated that, despite her mother's concern, he did not see evidence that plaintiff had a severe psychopathology. He noted that plaintiff had good verbal skills, reciprocity, and compliance, was well behaved, and did not appear to be anxious. Dr. Morse concluded that he could "only diagnose her with a Disruptive Disorder NOS," and opined that plaintiff's family may have been "overly sensitized" to plaintiff's behaviors because plaintiff's severely disabled sister had been placed in the Providence Child

Center soon after plaintiff was born. He recommended that focus be placed on "more behavioral and parenting interventions . . . ."

Lianne Lennert, Psy.D., evaluated plaintiff's eligibility for Early Childhood Special Education services when plaintiff was three years old. Dr. Lennert reported that she observed functional hearing and vision, and that plaintiff demonstrated appropriate language, articulation, voice, and fluency. In a report dated May 28, 2003, she opined that plaintiff's "actual speech/language abilities may exceed the results which have been presented," and concluded that specially designed services for speech and language were not recommended.

On September 2, 2006, shortly before she entered first grade, plaintiff was seen with her mother by Dr. Lawrence Krupa, a specialist in behavioral and developmental pediatrics. Based upon plaintiff's mother's description of plaintiff's behavior, Dr. Krupa concluded that plaintiff met "all of the criteria for Asperger's syndrome," and submitted that as a "formal diagnosis" of plaintiff's "problem." On September 14, 2006, Dr. Krupa diagnosed Hypersensitivity NOS and Pervasive Developmental Delay NOS.

Roderick Calkins, Ph.D., conducted a consultative psychological evaluation of plaintiff on June 6, 2007. Based upon testing and his interview with plaintiff's parents, Dr. Calkins opined that the information he obtained from plaintiff's parents was "at odds with . . . observed behaviors and test performance during this evaluation." He added that basing an estimate of plaintiff's skill development on the parents' report alone "would be a questionable practice." Though plaintiff's father had reported that plaintiff had poor communication skills and did not speak in full sentences or use age-appropriate speech, Dr. Calkins found that plaintiff's speech was age-appropriate, understandable, and oriented to the topics being discussed. Though plaintiff's mother reported that plaintiff was easily

FINDINGS AND RECOMMENDATION - 7

distracted, Dr. Calkins noted that plaintiff remained engaged in testing even when both he and plaintiff's mother were talking.  The results of plaintiff's intellectual functioning tests were appropriate for her grade level (first), and were well within the average range.  Plaintiff's reading standard score placed her in the 42nd percentile, and her score on the WRAT-III, which tested her math skills, placed her in the 23rd percentile.  Dr. Calkins stated that plaintiff's word reading abilities tested in the average range for individuals her age, and that her arithmetic achievement test scores fell "just below the average range."  He added that plaintiff was "making adequate progress in acquiring basic academic skills."  Based upon his assessment, Dr. Calkins diagnosed "Disruptive Behavior Disorder, not otherwise specified (provisional-no objectively observed disruptive behavior)" with the need to rule out "Reading disorder/ADHD."  Dr. Calkins also diagnosed "Parent-Child Relational-Problem," and rated plaintiff's Global Assessment of Functioning (GAF) at 70, which is in the "normal" range.

       Sally Clayton, Ph.D., testified as a Medical Expert (ME) at the hearing before the ALJ.  Dr. Clayton stated that a GAF of 70 was "within normal limits level of functioning with some mild symptoms that occur under stress."  Based upon the medical evidence in the record, Dr. Clayton testified that plaintiff did not have an impairment whose severity met or medically equaled the criteria for any mental health impairments listed in the regulations.  Dr. Clayton noted that, though Dr. Krupa had opined on September 2, 2006, that plaintiff met the criteria for Asperger's Syndrome, on September 14, 2006, he diagnosed only Hyper Sensitivity Disorder, NOS, and Pervasive Developmental Delays, NOS.  In her decision, the ALJ correctly noted that these diagnoses were based upon plaintiff's mother's reports.  She also noted that the ME disagreed with the diagnoses of Dr. Krupa, and with a "fill-in-the-blank" mental capacity  assessment form dated October 19, 2006.

FINDINGS AND RECOMMENDATION - 8

Based in part on the ME's testimony, the ALJ rejected Dr. Krupa's diagnoses. In support of that rejection, she noted that Dr. Krupa had seen plaintiff only three times during a one-month period, had performed no objective testing, and reported observations of plaintiff's behavior that were inconsistent with the subjective claims of plaintiff's mother. The ALJ correctly noted that none of the other experts who had evaluated plaintiff's mental health, including Dr. Sacks, Dr. Morse, Dr. Lennert, and Dr. Calkins, had diagnosed plaintiff with Asperger's Syndrome, Hyper-Sensitivity, or Developmental Delays. She also correctly noted that these doctors consistently characterized the allegations of plaintiff's parents concerning plaintiff's cognitive, physical, and developmental problems as exaggerated and inconsistent with objective observations and testing.

Plaintiff contends that the ALJ failed to provide any rationale for concluding that she did not have a "severe" reading disorder, and contends that the ALJ should have further developed the record "in light of Dr. Calkins' conclusion that a Reading Disorder should be ruled out, Dr. Clayton's opinion that the learning disorder is established and counsel's request at the first hearing that the reading test be performed, as recommended by Dr. Krupa."

I disagree. The ALJ cited testimony from the ME indicating that plaintiff had no "behavioral, cognitive, physical and developmental problems with the exception of being slightly behind in reading in the second quarter of the first grade." The ALJ also noted a "glaring disparity in reading scores" on tests taken only three months apart. She noted that in January, 2007, plaintiff scored "30-points above the average . . . score of 76 on the broad reading portion of the test," and subsequently "only scored 76" in May, 2007. She added that plaintiff clearly had the "cognitive functioning to be adequate in reading, based on average and above average communication and writing scores she has consistently achieved in

testing."  The ALJ cited the ME's testimony indicating that other experts had opined that the "significant drop in reading score could be secondary to the mother's influence . . . in allowing [plaintiff] to continue to do activities allowed at a younger age."  Citing the ME's testimony that evaluations by several experts reflected "only a provisional diagnosis of Disruptive Behavior Disorder," the ALJ concluded that plaintiff had a "questionable reading disorder which is non-severe given the strength of her overall cognitive testing results."

The ALJ is responsible for resolving conflicts in the medical evidence.  See <u>Carmicle v. Commissioner</u>, 533 F.3d 1155, 1164 (9th Cir. 2008).  In evaluating a claimant's impairments, an ALJ must consider opinions from all sources, and must weigh the consistency of these opinions with the overall record.  SSR 06-03p.  Here, the ALJ thoroughly reviewed the medical record, accurately set out the applicable standards of evaluation, and provided ample support for her conclusion that plaintiff did not have a reading disorder or ADHD that was "severe" within the meaning of the relevant regulations.  She also thoroughly reviewed the question whether plaintiff had an impairment or impairments that met or equaled an impairment in the listings.  Her conclusions as to both of these issues were supported by substantial evidence in the record, did not result from legal error, and should be upheld.

## Conclusion

The Commissioner's decision denying plaintiff's request for an award of disability benefits should be AFFIRMED, and a judgment should be entered dismissing this action with prejudice.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due July 1, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 14th day of June, 2010.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 11